IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

|  |  |
|---|---|
| I.P.,<br><br>       Plaintiff,<br><br>       v.<br><br>COMMISSIONER, SOCIAL SECURITY<br>ADMINISTRATION,<br><br>       Defendant. | Civ. No. 20-4958 (RMB)<br><br>**OPINION** |

**BUMB**, United States District Judge:

This matter comes before the Court upon an appeal by Plaintiff I.P. from a denial of social security disability benefits. For the reasons set forth below, the Court will affirm the decision of Administrative Law Judge ("ALJ") Nicholas Cerulli.

## I.      STANDARD OF REVIEW

When reviewing a final decision of an ALJ with regard to disability benefits, a court must uphold the ALJ's factual decisions if they are supported by "substantial evidence." Knepp v. Apfel, 204 F.3d 78, 83 (3d Cir. 2000); 42 U.S.C. §§ 405(g), 1383(c)(3). "Substantial evidence" means "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Cons. Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)); Plummer v. Apfel, 186 F.3d 422, 427 (3d Cir. 1999).

In addition to the "substantial evidence" inquiry, the court must also determine whether the ALJ applied the correct legal standards. See Friedberg v. Schweiker, 721 F.2d 445, 447 (3d Cir. 1983); Sykes v. Apfel, 228 F.3d 259, 262 (3d Cir. 2000). The Court's

review of legal issues is plenary. Sykes, 228 F.3d at 262 (citing Schaudeck v. Comm'r of Soc. Sec., 181 F.3d 429, 431 (3d Cir. 1999)).

The Social Security Act defines "disability" as the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). The Act further states,

> [A]n individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 1382c(a)(3)(B).

The Commissioner has promulgated a five-step, sequential analysis for evaluating a claimant's disability, as outlined in 20 C.F.R. § 404.1520(a)(4)(i-v). The analysis proceeds as follows:

> At step one, the ALJ determines whether the claimant is performing "substantial gainful activity[.]" 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If he is, he is not disabled. Id. Otherwise, the ALJ moves on to step two.

> At step two, the ALJ considers whether the claimant has any "severe medically determinable physical or mental impairment" that meets certain regulatory requirements. Id. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). A "severe impairment" is one that "significantly limits [the claimant's] physical or mental ability to do basic work activities[.]" Id. §§ 404.1520(c), 416.920(c). If the claimant lacks such an impairment, he is not disabled. Id. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). If he has such an impairment, the ALJ moves on to step three.

> At step three, the ALJ decides "whether the claimant's impairments meet or equal the requirements of an impairment listed in the regulations[.]" Smith,

631 F.3d at 634. If the claimant's impairments do, he is disabled. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If they do not, the ALJ moves on to step four.

At step four, the ALJ assesses the claimant's "residual functional capacity" ("RFC") and whether he can perform his "past relevant work." Id. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). A claimant's "[RFC] is the most [he] can still do despite [his] limitations." Id. §§ 404.1545(a)(1), 416.945(a)(1). If the claimant can perform his past relevant work despite his limitations, he is not disabled. Id. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If he cannot, the ALJ moves on to step five.

At step five, the ALJ examines whether the claimant "can make an adjustment to other work[,]" considering his "[RFC,] … age, education, and work experience[.]" Id. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). That examination typically involves "one or more hypothetical questions posed by the ALJ to [a] vocational expert." Podedworny v. Harris, 745 F.2d 210, 218 (3d Cir. 1984). If the claimant can make an adjustment to other work, he is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If he cannot, he is disabled.

Hess v. Comm'r Soc. Sec., 931 F.3d 198, 201–02 (3d Cir. 2019).

## II.    **FACTS**

The Court recites only the facts that are necessary to its determination on appeal, which is narrow. Plaintiff was 40 years old on the alleged outset date, and 44 years old at the time of the ALJ's decision. [Docket No. 11, at 3]. She holds a GED and an Associate's Degree. [Id.] From 1998 until 2003, and again in 2010 and 2011, Plaintiff worked a desk job for a defense contractor. [Id.] In addition, Plaintiff was a part-time real estate agent in 2007 and 2008, and a full-time social caseworker from 2012 through 2014. [Id.]

Plaintiff filed her initial disability action due to her alleged schizophrenia, schizoaffective disorder, chronic depression, and bipolar disorder. [Id. at 5]. According to Plaintiff's treating psychiatrist, Dr. Harbison, Plaintiff suffered from extreme limitations in her ability to make judgments on simple decisions, interact with the public, interact

with supervisors, interact with coworkers, and respond appropriately to work situations. [Id. at 11].

## III.   ALJ'S DETERMINATION

The ALJ found that Plaintiff was not disabled. Specifically, the ALJ determined that Plaintiff met the insured status requirements of the Social Security Act, had not engaged in substantial gainful activity since her alleged disability onset date, and has several severe impairments—namely schizophrenia, schizoaffective disorder, generalized social phobia, and post-traumatic stress disorder. [Docket No. 8-2 at 18]. Nevertheless, the ALJ concluded that Plaintiff did not have "an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments" in the relevant C.F.R., and that Plaintiff had the residual functional capacity to perform a full range of work at all exertional levels, albeit with limitations. [Id. at 18-27]. Thus, when the ALJ considered Plaintiff's age, education, work experience, and residual functional capacity, as well as Plaintiff's limitations, he concluded that Plaintiff could perform a significant number of jobs in that national economy and was not disabled under the Social Security Act. [Id. at 28].

## IV.   ANALYSIS

Plaintiff now challenges the ALJ's decision on three grounds: (1) whether the ALJ gave legally sufficient reasons for discrediting Plaintiff's treating psychiatrist's opinions, (2) whether the ALJ gave legally sufficient reasons for rejecting the findings of a non-examining Stage-agency psychiatrist and psychologist, and (3) whether the substantial evidence supported the ALJ's Step-5 findings.

A.  <u>Discrediting Plaintiff's Treating Psychiatrist</u>

Plaintiff contends that the ALJ failed to provide legally sufficient reasons for rejecting the opinion of her treating psychiatrists, Dr. Harbison. More specifically, Plaintiff argues that the ALJ erred in discrediting Dr. Harbison's opinions overall, and that the ALJ failed to give proper weight to Dr. Harbison's longstanding history in treating Plaintiff and expertise in psychiatry. [<u>See</u> Docket No. 11]. Defendant responds that the ALJ did not err, and instead partially discredited Dr. Harbison's opinion after thoroughly reviewing the entire record. Moreover, Defendant contends that an ALJ's finding were supported by the "substantial record evidence," even if Plaintiff, or others, disagree with those findings. [Docket No. 12 (quoting <u>Simmonds v. Heckler</u>, 807 F.2d 54, 58 (3d Cir. 1986))].

An ALJ has "the statutory authority to choose whom to credit when witnesses give conflicting testimony" but "the ALJ 'cannot reject evidence for no reason or the wrong reason.'" <u>Mason v. Shalala</u>, 994 F.2d 1058, 1066 (3d Cir. 1993) (quoting <u>Cotter v. Harris</u>, 642 F.2d 700, 707 (3d Cir.1981)). "While the ALJ is . . . not bound to accept physicians' conclusions, he may not reject them unless he first weighs them against other relevant evidence and explains why certain evidence has been accepted and why other evidence has been rejected." <u>Kent v. Schweiker</u>, 710 F.2d 110, 115 n.5 (3d Cir. 1983).

Here, the ALJ provided clear and permissible reasons for partially discrediting Plaintiff's treating psychiatrist. The ALJ "assign[ed] little weight" to Dr. Harbison's opinion due to inconsistencies between that opinion and the record evidence. [<u>See</u> Docket No. 8-2 at 25]. For instance, the ALJ compared Dr. Harbison's findings with evidence that Plaintiff engaged in various social activities, coped with "situational stressors," and that she "consistently referenced normal cognitive functioning (including with regard to

concentration, attention, and memory)." [Id.] Moreover, the ALJ further noted that Dr.

Harbison's opinion "failed to quantify the limitations assessed," and that he was unable to

assign more weight to the opinion "due to its vague and conclusory nature." [Id. at 24].

Each of these findings was supported by evidence in the record. Accordingly, the Court

finds that the ALJ partially rejected Dr. Harbison's opinion only after providing legally

sufficient reasons for doing so.

    B.  State-Agency Psychiatrist and Psychologist

    Similarly, Plaintiff contends that the ALJ erred in assigning little weight to the

opinions of Stage-agency psychological consultants Dr. Golin and Dr. Shapiro. These

consultants opined that Plaintiff had moderate restrictions with activities of daily living,

moderate difficulties maintaining social function, and moderate limitations remembering

locations and work-like procedures. [Docket No. 8-2, at 26]. Defendant responds that the

ALJ discrediting the consultant's opinions only after a thorough and sufficient analysis.

    As explained by the ALJ, the consultants critically erred by evaluating Plaintiff under

regulations that had since been superseded. [Id.]. In particular, the outdated regulations did

not define the terms "mild," "moderate," "marked," or "extreme." [Id.]. So, rather than

accept the consultants' categorizations, the ALJ applied the consultants' findings to the

definitions in the updated regulations. [See id.]. Then, the ALJ compared the consultants'

opinions to "additional evidence received at the hearing level," which "reveal[ed] more

significant functional limitations than assessed by these consultants." [Id. at 27]. As

Defendant correctly notes, "[t]he ALJ's role is not merely to choose between the opinions of

various medical sources," and he must instead "conduct an independent analysis of the

relevant evidence and reach his own determination concerning a claimant's [residual functional capacity]." [Docket No. 12, at 14-15]. That is precisely what the ALJ did here.

C.  Step-5 Determination

Plaintiff's final argument concerns the ALJ's Step-5 Determination that there are a significant number of jobs in the national economy that Plaintiff could perform. More specifically, Plaintiff's argument here concerns the ALJ's finding that Plaintiff could not perform "quota or production-based work, but rather goal-oriented work." [Docket No. 8-2, at 28]. The vocational expert identified three occupations that Plaintiff could perform, which exist in substantial numbers nationally: drier attendant, collator operator, and document preparer. During Plaintiff-counsel's cross examination of the vocational expert, counsel questioned whether these jobs truly involved no quotas or production-based work. The vocational expert responded that there would likely be work-product expectation in these roles, but that they were not quota-based jobs. Since the ALJ concluded that Plaintiff could work no jobs with any quota, Plaintiff argues that the ALJ erred in accepting the vocational expert's conclusion.

Plaintiff's argument is incorrect. The vocational expert did not testify that these were production-based jobs. Instead, the vocational expert agreed that the identified jobs had "some kind of production standard," but that "every job would have some [similar] expectation." [Docket No. 8-2, at 89]. Moreover, Plaintiff is ignoring the difference between "production-based work," and meeting the demands of a particular job. If the Court accepted Plaintiff's definition, then nearly every job would be "production-based work." But this conclusion would be both nonsensical on its face, and inconsistent with the ALJ's

earlier finding that Plaintiff had the residual functional capacity to perform some types of work. Accordingly, the Court reject's Plaintiff's argument.

## V.        <u>CONCLUSION</u>

For the forgoing reasons the Court will affirm the ALJ's decision. An appropriate Opinion accompanies this Order.


DATE: September 9, 2021                    <u>s/ Renée Marie Bumb</u>
                                           RENÉE MARIE BUMB
                                           UNITED STATES DISTRICT JUDGE